(C. D. 1417)

VAN GELDER-FANTO CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 20, 1952)

*Eugene R. Pickrell* for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon* and *Joseph E. Weil*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: This case concerns cholesterol, concededly a chemical compound and classified as such under paragraph 5 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 5), with duty assessment at 25

per centum ad valorem. Plaintiff claims that the substance is more specifically provided for as a drug, admitting it to be advanced in value or condition, and therefore within the provision for advanced drugs in paragraph 34 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 34), which, so far as it concerns us here, reads as follows:

* * * Drugs, * * * which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided,* That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further,* That no article containing alcohol shall be classified for duty under this paragraph.

Cholesterol is a natural product of animal origin, extracted from brains and spinal cords of animals, and also obtained from wool grease. It is uncompounded and contains no alcohol. While it may be taken without deleterious results and occurs in many food products, it is not eaten as food and contains no value as such. The meaning of "not edible," as used in paragraph 34, *supra,* applies. *United States* v. *Yick Shew Tong Co.,* 25 C. C. P. A. 255, T. D. 49392.

The effect of this uncontradicted testimony is to limit the issue to a determination as to whether cholesterol has therapeutic or medicinal properties and is chiefly used for medicinal purposes, both being conditions essential for classification as a drug.

Proof offered by plaintiff supports the following summation.

Ciba Pharmaceutical Products, Inc., manufacturer of ethical medicinal chemicals, purchased the cholesterol in question. Dr. Max Donauer, chief chemist of that corporation, whose duties are to supervise the chemical manufacture and quality control of his employer's products, arranged for its purchase, plaintiff's exhibit 2, saw it on arrival, and, upon analysis in accordance with the procedure outlined in the United States Pharmacopœia, found the specifications and quality for cholesterol as set forth therein (13th revision, the volume in effect at the time of the present importation) to be fully met.

Based upon experience that included supervision over production using approximately 60 tons of cholesterol, the witness testified that "the main use, as I know it, is for hormone manufacture." The merchandise in question was used in the production of various hormones, such as testosterone, methyl testosterone, anhydrohydroxyprogesterone, testosterone propionate. A minor use for cholesterol is in making various medicinal ointments and creams. As a manufacturing chemist and without any knowledge as to pharmaceutical formulations, the witness was unable to give the properties of, or the purpose served by, cholesterol in said uses. This deficiency is a serious omission and affects most adversely plaintiff's claim herein.

Dr. Heinz Loewenstein, another witness, received his degree in pharmacy from the University of Berlin in 1928 and his degree in chemistry from the same university in 1931. From 1928 to 1938, he was employed either in Germany or in Holland, first as a pharmacist and later as an analytical chemist. Since 1938, the witness has been employed as research chemist and production manager for Duke Laboratories of Stamford, Conn., manufacturer of ointments, cosmetics, and ointment bases. Referring to his familiarity with cholesterol, he stated, "we are using it in manufacturing of wool wax containing cholesterol." Products manufactured by his company do not use the isolated cholesterol but employ wool wax alcohols containing the substance as an ingredient. Nothing appears in any of the witness' statements tending to show therapeutic or medicinal properties, and medicinal usage, of cholesterol.

Dr. Frederick D. Lascoff, licensed pharmacist since 1923 engaged in "manufacturing pharmaceutical specialties which are sold to other pharmacists, which in turn are dispensed on physicians' prescriptions," merely stated that he used cholesterol in filling various physicians' prescriptions, particularly those ordered by dermatologists. The witness made no attempt to testify concerning alleged therapeutic properties and medicinal usage of cholesterol, and certainly his training would not qualify him to do so.

Dr. Paul Gross, a dermatologist, has included cholesterol as a part of prescriptions given as remedies for skin diseases, "especially acute dermatitis, either contact dermatitis due to allergies, or eczemas of various types, particularly in the oozing stage, or in the blister stage, including poison ivy dermatitis, and other skin diseases that show some acute manifestation, which means that they are acutely inflamed as well as oozing." Cholesterol is never prescribed for use by itself. It appears as a constituent in preparations, consisting of an ointment base, petrolatum, to which water is added. The effect of cholesterol is purely physical; it adds lubricating effect to petrolatum. The water in oil has the alleviating effect on the dermatitis condition. The cholesterol is fundamentally a carrier used for the purpose of bringing the oil and water into usable shape. The effect of such testimony is to show the value of physical properties of cholesterol, rather than to establish therapeutic or medicinal qualities.

Dr. William S. Takacs is licensed in Ohio to practice mechanotherapy, described by the witness as "the study of the handling of diseases which comprise such things as rheumatism, bursitis, arthritis, and makes use of the means of hydrotherapy, ultra-violet, medical massage, and manipulation." His testimony concerning cholesterol refers solely to experimental work performed on monkeys, attempting to inactivate or neutralize the poliomyelitis virus with the use of cholesterol, and is not even remotely associated with the use of the commodity for practical commercial purposes.

Plaintiff's proof is not sufficient to sustain classification as a drug under paragraph 34, *supra*. Chief use of cholesterol is in the production of hormones, yet there is not one iota of proof toward establishing that the substance has therapeutic value and is used for a medicinal purpose in such finished products. Mere presence of the substance in a medicinal product does not meet the mandatory requirements of paragraph 34, *supra*.

Counsel for plaintiff, in his reply brief, argues in effect that although the statutory definition of a drug embodies two conditions precedent—therapeutic properties and medicinal use—for a substance to be so classifiable, one condition is not dependent on the other. To adopt such reasoning, would be contrary to the statutory definition and defeat its obvious purpose. In enacting the tariff definition in said paragraph 34, Congress established a standard to be followed in fixing classification of merchandise as a drug. *Sherka Chemical Co., Inc.* v. *United States*, 33 C. C. P. A. 53, C. A. D. 316, characterizes the definition as an excluding provision that excludes from classification as a drug "substances not having therapeutic or medicinal properties *and* not chiefly used for medicinal purposes." [Italics added.]

*G. D. Searle & Co.* v. *United States*, 21 Cust. Ct. 112, C. D. 1138, discussed at length by plaintiff's counsel, does not support his theory. In that case, the concentrated ox gall under consideration was found to possess inherent therapeutic agents, making the substance available for its chief use in treatment for biliary disorders and diseases of the biliary tract. Those facts, meeting all the conditions of the statutory definition, established classification for the merchandise as a drug. No comparable factual foundation for the cholesterol under consideration is present in this case.

Our reasoning supports defendant's position, as expressed in counsel's brief, "that in order to be classified under paragraph 34 of the Tariff Act as a drug, a substance must have *per se* properties of either alleviating or curing of bodily disorders or diseases and must be chiefly used for these purposes." That analysis is not an unduly restricted interpretation of the definition, which plaintiff suggests it to be. On the contrary, the conclusion herein follows the clear and unambiguous statutory language.

Supplementing our finding that plaintiff's proof is insufficient to establish *prima facie* that the cholesterol in question is a drug, is the testimony of defendant's witness, Dr. McKeen Cattell, who received his doctor's degree in medicine from Harvard University, and has devoted his career largely to pharmacology, having been, for the past 8 years, professor of pharmacology at Cornell University. When asked whether cholesterol possesses therapeutic or medicinal properties, the doctor answered this way: "It has no specific activity. It is useful in various pharmaceutical preparations, purely from its physical properties by which it is possible to combine. It is an emul-

sifying agent. It is one of the emulsifying agents which makes it possible to combine oil and water in a uniform mixture. It absorbs water, which may be useful in certain circumstances. It has the properties which are common in many of the cold creams or cosmetic preparations." That testimony bears out abundantly our rejection of plaintiff's claim.

For reasons hereinabove set forth, we hold that plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification of the cholesterol in question under paragraph 5, *supra*, as a chemical compound, a category which plaintiff has conceded to be applicable to the commodity.

The protest is overruled and judgment will be rendered accordingly.